UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

----------------------------------------------------X

TIMOTHY BLAU,

        Plaintiff,

   -against-

SUFFOLK COUNTY, SUFFOLK COUNTY
POLICE P.O. JUSTIN MAYNES Badge
number 5632, DEFENDANT P.O. MURTHA
Badge number 5640, and P.O.S JOHN AND
JANE DOE #1-10,

        Defendants.

----------------------------------------------------X

**MEMORANDUM &**
**ORDER**
11-CV-4818 (JMA) (SIL)

FILED
CLERK

2/3/2016 4:46 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

APPEARANCES:

     Craig Stuart Lanza
     145 West 12th Street, 4-1
     New York, NY 10011
        *Attorney for Plaintiff*

     Arlene S. Zwilling
     Suffolk County Attorney
     H. Lee Dennison Building-Fifth Floor
     100 Veterans Memorial Highway
     Hauppauge, NY 11788-0099
        *Attorney for Defendants*

**AZRACK, United States District Judge:**

   In this suit, plaintiff Timothy Blau alleges violations of his federal civil rights and state law stemming from his arrest and imprisonment on charges of driving while intoxicated. The individual and municipal defendants have all moved for summary judgment. For the reasons stated below, the Court grants defendants summary judgment on all of plaintiff's claims.

# I. BACKGROUND

On July 18, 2011, at around 2 a.m., plaintiff and another individual, David Martinez, were in plaintiff's car when the car struck a tree. The question of who was driving the car when the accident occurred was central to Blau's subsequent arrest and prosecution.

After the accident, two police officers, defendants Timothy Murtha and Justin Maynes, arrived on the scene. According to Officer Murtha, who was the first officer to arrive, Blau initially admitted that he was driving the car, but subsequently backtracked on that statement, saying that he did not did know who was driving. (Dep. of Timothy Murtha at 9, 12–14.) The officers then spoke to plaintiff and Martinez separately, and Martinez signed a sworn statement attesting that plaintiff was driving the car. (Id. at 14.) The officers then arrested plaintiff for driving while intoxicated. (Dep. of Timothy Blau at 94.)

Plaintiff's version of events diverges from the accounts of the officers in certain respects. Plaintiff denies that he ever told the officers that he was driving the car. (Aff. of Timothy Blau ¶ 3.). According to plaintiff, after the officers separated he and Martinez, plaintiff told Officer Maynes that Martinez was the driver.[1] (Blau Dep. 87–90.) While the two men were separated, plaintiff heard Martinez say that plaintiff was driving the car. (Id. at 91.) Blau was only a couple of feet away from Martinez when he heard Martinez make this statement. (Id.)

Martinez then gave the officers the sworn written statement, on a Motor Vehicle Crash Supplement Report form. (Defs.' Ex. G, ECF No. 37-8; Blau Dep. 93–94; Pl.'s 56.1 ¶ 15.) The report states that "Timothy was driving." (Pl.'s 56.1 ¶ 15.) The report Martinez signed warned that any false statements made in the document are punishable as a misdemeanor under Section 210.45 of the New York Penal Law. (Id.)

---

[1] Officer Murtha insists that it was he, not Officer Maynes, who spoke to plaintiff when the two men were separated. (Murtha Dep. at 13.) Officer Murtha also claims that, during this conversation, plaintiff did not identify Martinez as the driver, and kept saying that he did not know who was driving. (Id.).

At some point, the officers gave plaintiff a "breath alcohol test," which indicated he was intoxicated. (Pl.'s 56.1 ¶ 14; Blau Dep. 92.) The officers then arrested plaintiff. Martinez was not given a breathalyzer test at the scene; after plaintiff's arrest he was driven home by his mother. (Murtha Dep. 14; Blau Dep. 92.)

Plaintiff was then taken to the precinct, where he was given a second breath analysis test, which showed that his blood alcohol level was .13%. (Pl.'s 56.1 ¶ 17.)

Officer Maynes then swore out two misdemeanor informations against plaintiff. The first information charged plaintiff with violating N.Y. Vehicle & Traffic Law ("VTL") § 1192.02 by driving with a blood alcohol level of more than .08%. (Pl.'s Ex. E., ECF No. 36-6.) This information includes the following statement: "THE DEFT DID STATE TO PO MURTHA #5640 THAT HE WAS DRIVING THE VEHICLE." (Id.) The second information charged plaintiff with violating VTL § 1192.03 by driving while in an intoxicated condition. (Defs.' Ex. I, ECF 37-10.) The second information does not explicitly reference plaintiff's alleged admission to Officer Murtha. (Id.)

On July 18, plaintiff was arraigned on the charges. At the arraignment, the prosecutor requested that bail be set at $15,000 based on plaintiff's record, which included a 2005 felony DWI, a 2004 misdemeanor, a 1997 driving while impaired conviction, and one out-of-state DWI conviction. (Defs.' Ex. J at 4–5, ECF No. 37-11.) At the arraignment, plaintiff told the Court that he was not the driver of the car. (Id. at 4.) The court granted the prosecutor's request and set bail at $15,000, stating that its decision was "[b]ased upon [plaintiff's] prior criminal history." (Id. at 6.) Plaintiff was unable to make bail. (Pl.'s 56.1 ¶ 21.)

Approximately two months later, Martinez recanted his sworn statement, telling the prosecutor that he wanted to change his story to say that he was driving at the time of the crash.

(Dep. of Justin Maynes at 33; Defs.' Ex. E & F, ECF Nos. 37-6 & 37-7.)  It appears that Martinez recanted his statement right before he was supposed to testify in the grand jury. (Maynes Dep. 33.)  The prosecutor then dismissed the charges against plaintiff, who had served 58 days in pretrial detention.[2]  (Defs.' Ex. K, ECF No. 37-12; Compl. ¶ 26.)

When Martinez was deposed in this action, he invoked the Fifth Amendment in response to all relevant questions about the events surrounding the crash.  (<u>See generally</u> Dep. of David Martinez)

## II.  DISCUSSION

### A.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating that "no genuine issue of material fact exists."  <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir.2002) (citations omitted).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" "while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Konikoff v. Prudential Ins. Co. of Am.</u>, 234 F.3d 92, 97 (2d Cir. 2000) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).

---

[2]  Plaintiff maintains that his "attorney was able to convince the D.A.'s office to discontinue" the prosecution because blood that was found on the driver's side of the car did not match plaintiff's DNA.  (Blau Aff. ¶ 2.)

**B. Federal Claims for False Arrest, Malicious Prosecution, and Abuse of Process**

Plaintiff's claims under Section 1983 for false arrest, malicious prosecution, and abuse of process all turn on whether or not the officers had probable cause at the time of plaintiff's arrest and arraignment. Defendants are entitled to summary judgment on these claims because the officers had probable cause or, at the very least, arguable probable cause.

**1. Standard for Probable Cause and Arguable Probable Cause**

A plaintiff cannot prevail on claims for false arrest, malicious prosecution, and abuse of process if the defendant had probable cause to arrest and prosecute the plaintiff.[3] See Hoyos v. City of New York, 999 F. Supp. 2d 375, 385 (E.D.N.Y. 2013) (granting summary judgment on false arrest, malicious prosecution, and abuse of process claims where there was probable cause for plaintiff's arrest and prosecution). For the malicious prosecution claim, Blau bears the burden of proving that defendants lacked probable cause for commencing his prosecution. Id. at 389. The Court assumes *arguendo* that defendants bear the burden of proving that there was probable cause for Blau's warrantless arrest, id. at 385 n.2, and that, for the abuse of process claim, they also bear the burden of proving that they had probable for Blau's arrest and prosecution, see id. at 391.

"'Probable cause [to arrest] exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (quoting Williams v. Town of

---

[3] In a recent decision, the Second Circuit noted that there is confusion in its precedent on the question of whether probable cause is a complete defense to an abuse of process claim. Mangino v. Inc. Village of Patchogue, 808 F.3d 951, 959 (2d Cir. 2015). Although the Circuit declined to resolve this confusion in Mangino, it held that, given this confusion, a defendant is entitled to qualified immunity for an abuse of process claim if the defendant had probable cause. Id.

<u>Greenburgh</u>, 535 F.3d 71, 79 (2d Cir. 2008)).  "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases."  <u>Stansbury v. Wertman</u>, 721 F.3d 84, 95 (2d Cir. 2013).  Probable cause for a prosecution has "'been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.'"  <u>Id.</u> (quoting <u>Boyd v. City of New York</u>, 336 F.3d 72, 76 (2d Cir. 2003)).

"When determining whether probable cause exists courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'"  <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002) (quoting <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 569 (2d Cir. 1996)).  "A court examines each piece of evidence and considers its probative value, and then 'look[s] to the totality of the circumstances" to evaluate whether there was probable cause to arrest and prosecute the plaintiff."  <u>Stansbury</u>, 721 F.3d at 89 (quoting <u>Panetta v. Crowley</u>, 460 F.3d 388, 395 (2d Cir. 2006)).

"[A] court considering a summary judgment motion in a false-arrest or malicious-prosecution case must construe in favor of the non-moving party any factual disputes regarding what circumstances were known to the officer at the relevant time."  <u>Benn v. Kissane</u>, 510 F. App'x 34, 37 (2d Cir. 2013), <u>cert.</u> <u>denied</u>, 134 S.Ct. 78 (2013).  "After that, however, the court must undertake a neutral, legal analysis of whether those (assumed) circumstances satisfy the probable-cause standard."  <u>Id.</u> (citing <u>Jenkins v. City of New York</u>, 478 F.3d 76, 88 (2d Cir. 2007)).  "In other words, the court should resolve in favor of the non-moving party any disputes about what information the officer knew, but it should *neutrally* determine whether that information gave rise to probable cause."  <u>Id.</u> (emphasis in original).

Even if an officer did not have probable cause for an arrest and prosecution, he is entitled to qualified immunity if his decision was "objectively reasonable."  <u>Jenkins</u>, 478 F.3d at 87.  A

probable cause determination is objectively reasonable "if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Lennon v. Miller, 66 F.3d 416, 423–24 (2d Cir. 1995)). "[S]ummary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable." Id. at 88. If, however, on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate . . . ." Id.

### 2. Analysis

Here, Martinez signed a sworn statement attesting that plaintiff was the driver of the car. It is also undisputed that Martinez orally informed the officers that plaintiff was the driver. (See Blau Dep. 91.) Martinez's statements, combined with the fact that plaintiff owned the car and was intoxicated, establish that there was probable cause (or, at the very least, arguable probable cause) for plaintiff's arrest and prosecution. Because the record must be viewed in the light most favorable to plaintiff, the Court assumes that plaintiff: (1) never admitted to driving the car; and (2) affirmatively identified Martinez as the driver to the officers. Nevertheless, contradictory statements by plaintiff and Martinez to the officers are insufficient to negate probable cause, particularly in light of plaintiff's ownership of the car. See Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (granting summary judgment on false arrest claim where plaintiff denied victim's account and explaining that where alleged victim complains to officer and signs "a complaint or information charging someone with the crime, [the officer] has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."); Christman v. Kick, 342 F. Supp. 2d 82, 88 (D. Conn. 2004) (granting summary judgment where plaintiff and

the other driver in a car accident accused each of criminal conduct, and explaining that "a police officer may chose [sic] to rely on either of two conflicting sworn statements in determining probable cause, especially when he personally took the statements and was thus able to assess the credibility of the two victims/perpetrators, there was some uncontroverted evidence that supported one of the statements . . ., and there was no other evidence that raised questions as to the veracity of the statement upon which he relied"); Pawlicki v. City of Ithaca, 993 F. Supp. 140, 145 (N.D.N.Y. 1998) (granting summary judgment on false arrest claim stemming from incident between plaintiff pedestrian and driver where the competing eyewitness accounts implicated either the plaintiff or the driver in criminal conduct); cf. U.S. v. LaTray, 739 F. Supp. 88, 93 n. 3 (N.D.N.Y. 1990) (noting that, under the Restatement (Second) of Torts, if "A sees B and C bending over a dead man, . . . [and] B and C each accuse the other of murdering [the victim] . . .  A is privileged to arrest either or both.") (citing Restatement (Second) of Torts § 119, comment j (1965)).

Plaintiff argues that Martinez's statements are insufficient to establish probable cause because a jury could infer, from various pieces of circumstantial evidence, that those statements were coerced by the officers.  Plaintiff stresses that Martinez later recanted his statements and also points to the fact that Martinez's statements were not mentioned in the criminal informations or at plaintiff's arraignment.  Plaintiff also argues that because there is a factual dispute about plaintiff's alleged admission to Officer Murtha and a jury could find that Officer Murtha fabricated that statement, the jury could also infer, from such a finding, that Martinez's statements were coerced.  Additionally, plaintiff contends that the timing of his alleged admission, which came before Martinez's statement, further suggests coercion.

Plaintiff's argument is not persuasive. A reasonable jury could not conclude, based on those facts, that Martinez's statement was coerced. Plaintiff's coercion argument is further undermined by plaintiff's admission that, even when he was separated from Martinez, they were still only a few feet apart and plaintiff was able to hear Martinez accuse plaintiff of being the driver. (See Blau Dep. 91.)

Finally, plaintiff argues that probable cause was lacking because Officer Murtha's fabrication of plaintiff's admission shows that Officer Murtha was acting in bad faith. This argument fails because probable cause is an objective test, Benn, 510 F. App'x. at 36, and, "even where plaintiff alleges . . . that the malicious prosecution is based on fabricated evidence, 'the existence of probable cause independent of the fabricated evidence is a defense to that claim,'" Hoyos, 999 F. Supp. 2d at 390 (quoting Morse v. Spitzer, No. 07-cv-4793, 2012 WL 3202963, at *5 (E.D.N.Y. Aug. 3, 2012)). Although there is a factual dispute concerning plaintiff's alleged admission to Officer Murtha, Martinez's statements are independent evidence of probable cause that is sufficient to defeat plaintiff's false arrest, malicious prosecution, and abuse of process claims.

## C. Federal Fair Trial Claim

To establish a claim for denial of the constitutional right to a fair trial, plaintiff must show that: "(1) [an] investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of New York, 486 F. App'x. 149, 152 (2d Cir. 2012); see Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). A plaintiff may bring a fair trial claim even if the plaintiff's criminal case is dismissed before trial. Ricciuti, 124 F.3d at 126–130.

"The existence of probable cause to arrest and prosecute is not a complete defense to a fair trial claim." Hoyos, 999 F. Supp. 2d at 392 (citing Ricciuti, 124 F.3d at 130). Nevertheless, the existence of probable cause is still relevant, particularly to the question of whether the plaintiff can establish that the allegedly fabricated evidence caused a deprivation of his liberty. Id. at 394. For a fair trial claim, "[t]he causation standard is a familiar one—proximate cause." Lopez v. City of New York, 105 F. Supp. 3d 242, 247 (E.D.N.Y. 2015)

To establish causation, plaintiff argues that, under N.Y. Criminal Proc. Law ("CPL") § 170.70, Officer Maynes's inclusion of plaintiff's fabricated admission in the information led to bail being set and, thus, was the proximate cause of his incarceration. To understand plaintiff's argument, a brief detour into New York's criminal procedural law is required.

Under New York law, a defendant can be prosecuted by way of either a misdemeanor complaint or a misdemeanor information. If an information is filed against the defendant, the defendant can—as happened here—be held in pre-trial detention if he does not make bail. However, an information must be supported by sworn "[n]on-hearsay allegations that . . . establish . . . every element of the offense charged." N.Y. CPL § 100.40(1)(c); see also N.Y. CPL § 100.15(3). The requisite non-hearsay allegations may be provided by a police officer in the information itself or by another witness in a supporting deposition. N.Y. CPL § 100.40(1)(c). In contrast to an information, a complaint does not require sworn non-hearsay statements to support the charge. N.Y. CPL § 100.15(3) ("The factual allegations may be based either upon personal knowledge of the complainant or upon information and belief."). A complaint can be converted into an information if the prosecution subsequently provides the necessary non-hearsay allegations to support the charge. See N.Y. CPL §170.70. However, under N.Y. CPL § 170.70, the prosecution has only five days to provide the non-hearsay allegations necessary to

convert a complaint to an information.  Id.  If the prosecution fails to convert the complaint to an information in five days, the defendant must be released.  Id.

Here, plaintiff's theory of causation appears to be that, but-for the presence of his fabricated admission in the information, he would have been released on his own recognizance.[4] Put another way, plaintiff suggests that, if his fabricated admission had not been included in the information filed by Officer Maynes, then the prosecution would have had to proceed with a complaint, which would have prevented plaintiff from being imprisoned for 58 days. Plaintiff's theory of causation is flawed because it rests on untenable inferences that no reasonable jury could accept.

Critically, even if plaintiff's alleged admission never existed, the police and the prosecutor still had Martinez's sworn statement on the accident report.  Even if plaintiff never made the alleged admission, the police and the prosecution could have simply used Martinez's statement, which contained non-hearsay allegations, as a supporting deposition.[5]

"A supporting deposition is a written instrument accompanying or filed in connection with an information . . ., subscribed and verified by a person other than the complainant of such accusatory instrument, and containing factual allegations . . . which supplement those of the accusatory instrument and support . . . [the] charges contained therein."  N.Y. Crim. Proc. Law § 100.20.  Courts have concluded that "[a]ny document which 'support[s] or tends to support' the accusatory instrument may qualify as a supporting deposition."  People v. Modica, 724 N.Y.S.2d

---

[4]  Citing N.Y. CPL § 170.70, plaintiff contends that, absent the fabricated admission, he would not have been imprisoned at all.  The Court notes that, even under N.Y. CPL § 170.70, Blau could have been held for five days on a misdemeanor complaint.  That said, plaintiff could not have been imprisoned for 58 days based solely on a misdemeanor complaint.  Id.

[5]  This would have allowed Officer Maynes to file the case initially as an information.  And, even if he did not, the prosecution could have used the sworn statement, at Blau's arraignment or shortly thereafter, to convert a complaint against plaintiff into an information.

825, 828 (Crim. Ct. Richmond County 2001). Notably, Domestic Incident Reports ("DIRs"), in which an alleged victim swears to the truth of certain facts under penalty of perjury, "have been found sufficient to convert hearsay complaints to non-hearsay informations both on a daily basis in Criminal Court and in published decisions." People v. Richards, 43 Misc. 3d 1206(A), 990 N.Y.S.2d 439, 2014 WL 1317140, at *2 (Crim. Ct. N.Y. County 2014); see also People v. Morris, 991 N.Y.S.2d 288, 292–94 (Crim. Ct. New York County 2014) (explaining that the majority view among trial courts is that a DIR can serve as a supporting deposition even if it does not include all of the same facts set out in the information). The accident report that contains Martinez's sworn statement is, for relevant purposes, indistinguishable from a DIR. Accordingly, a jury could not conclude that the allegedly fabricated confession of plaintiff was a proximate cause of his 58-day incarceration.[6]

Moreover, even if the police thought that Martinez's sworn statement might not qualify as a supporting deposition, the officers could have simply obtained a run-of-the-mill supporting deposition from Martinez on the morning of July 18, containing the same statements in the accident report. Such a deposition would have allowed plaintiff to be prosecuted by way of information. And, even if for some reason the police failed to request a supporting deposition from Martinez on the morning of July 18, the prosecutor would have, in light of plaintiff's criminal record, undoubtedly ensured that such a supporting deposition was obtained within five days.[7]

---

[6] Plaintiff notes that Martinez's statements were not mentioned in the criminal information or at the arraignment. This fact is not probative of anything. Because Officer Maynes claimed that plaintiff admitted driving, there was no need for either the police or the prosecutor to cite Martinez's statement in the information or at the arraignment. Of course, if plaintiff's admission is taken out of the equation, Martinez's statements become much more important and would have undoubtedly been relied on by the police and prosecutor.

[7] Although Martinez recanted his sworn statement weeks later, no evidence in the record suggests that Martinez would have recanted in the days immediately the July 18 accident.

Finally, the Court notes that plaintiff's papers perhaps hint at one additional causation argument–that if the only direct evidence of plaintiff's driving were Martinez's statements, the discretionary decisions of the prosecutor or the court concerning bail would have been different. A reasonable jury, however, could not reach such a conclusion based on this record. Martinez swore that plaintiff was driving, plaintiff owned the car, and plaintiff had a record of prior DUIs—a point stressed by the arraignment court in setting bail.

**D. State Law Claims**

Defendants request that the Court decline to exercise supplemental jurisdiction over plaintiff's claims for false arrest and malicious prosecution under New York law if all of plaintiff's federal claims are dismissed. This request is puzzling because, for all relevant purposes, the same standards govern plaintiff's federal and state law claims for false arrest and malicious prosecution. See Jenkins, 478 F.3d at 88; Sanchez v. Port Auth. of New York and New Jersey, 08-cv-1028, 2012 WL 1068078, at *4, 8, 10 (E.D.N.Y. Mar. 29, 2012) The Court will exercise supplemental jurisdiction over the state law claims and grants summary judgment on those claims for the same reasons stated earlier.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted on all of plaintiff's claims. The Clerk of Court is directed to this case.

Dated: February 3, 2016
Central Islip, New York

　　　　　/s/ (JMA)　　　　　　
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE